Steven Weinmann (SBN 190956)
Steven.Weinmann@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:   (310) 943-0396
*Additional Counsel on Signature Page*
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ROBY PARTOVICH, individually, and on behalf of a class of similarly situated individual,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR COMPANY, INC., a California corporation, and HONDA MOTOR COMPANY LTD., a Japanese corporation,<br><br>Defendants. | Case No.: **'20 CV0676 CAB AHG**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Fraud and/or Fraudulent Omission<br>(2)  Violations of California's Consumers Legal Remedies Act<br>(3)  Viol. of Unfair Competition Law<br>(4)  Breach of Implied Warranty under the Song-Beverly Consumer Warranty Act<br>(5)  Breach of Express Warranty under California Law<br>(6)  Breach of Written Warranty under the Magnuson-Moss Warranty Act<br>(7)  Breach of Implied Warranty under the Magnuson-Moss Warranty Act<br>(8)  Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

1.     Plaintiff Roby Partovich ("Plaintiff") brings this action for himself and on behalf of all persons ("Class Members") in the United States, and in the alternative on behalf of all persons in the state of California, who purchased or leased model year 2016 to 2020 Acura MDX or 2019-2020 RDX vehicles ("Class Vehicles").

2.     Defendants American Honda Motor Company, Inc., ("Honda USA") and Honda Motor Company, Ltd. ("Honda Japan") (collectively, "Honda" or "Defendants") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced the Class Vehicles. Plaintiff alleges as follows:

## INTRODUCTION

3.     This is a consumer class action concerning the misrepresentation of material facts, the failure to disclose material facts, and safety concerns to consumers.

4.     Defendants manufactured, marketed, distributed, and sold the Class Vehicles without disclosing that the Class Vehicles' possessed a defect which materially affects the ability of the vehicles to provide safe, reliable transportation.

5.     Plaintiff is informed and believe, and based thereon alleges, that the Class Vehicles contain design, manufacturing, and/or workmanship defects which cause sudden, rapid deceleration, engine stalls, hesitation upon depressing the gas pedal, abrupt shutdowns and shifts into neutral while driving, especially at highway speeds, due to miscommunication among the computers and software which control the engine, throttle and transmission (the "Defect").  Upon information and belief, the Engine Control Module ("ECM")[1] and the Transmission Control Module ("TCM") are some of the components involved. The Defect causes unsafe driving conditions and affects Plaintiff's and other

---

[1] The ECM may also be called the Powertrain Control Module ("PCM").

drivers' ability to safely accelerate and maintain speeds while on roads, highways, and freeways.

6. The Defect is inherent in each Class Vehicle and was present at the time of sale or lease to each Class Member.

7. With each Acura vehicle, Honda promises "Precision Crafted Performance." The emphasis on driving performance is how Honda attempts to distinguish its luxury brand, Acura, from competitors.

8. In service to the goal of premier performance, each of the Class Vehicles are equipped with a Drive-By-Wire Throttle System ("Throttle System"), which Honda describes as "giv[ing] racing-inspired pedal movement and smooth, powerful response with just-right throttle sensitivity for most situations by replacing traditional cables with electronic components. Data is instantly factored in from engine RPM, coolant temperature, road speed, transmission status and more."[2]  In order for the vehicle to operate correctly, as intended, and as expected by a reasonable consumer, i.e. to accelerate when the gas pedal is depressed without hesitation, stalling, etc., the powertrain components, including the Throttle System, ECM/PCM, and TCM, must all communicate with each other seamlessly.  Upon information and belief, they do not.

9. Honda designed and manufactured the Class Vehicles, as well as the electrical, throttle, engine, and transmission systems and the software which controls these systems within the vehicles.

10. Within months of the sale of the first 2016 Acura MDX vehicles, Honda received complaints from consumers about hesitation on acceleration, stalling, and sudden shutdowns via its authorized dealers, as well as through safety complaint reports made to the National Highway Traffic Safety

---

[2] https://www.acura.com/performance#panel-heading-1

Administration ("NHTSA"), such as the following complaint (NHTSA ID Number: 10745761) reported on August 3, 2015:

> WHILE DRIVING, THE MDX SHIFTS INTO NEUTRAL AND CANNOT BE SHIFTED OUT OF NEUTRAL. THIS HAS OCCURRED ON THE HIGHWAY MULTIPLE TIMES. THE INFORMATION DISPLAY SHOWS FIRST EMISSIONS PROBLEMS, THEN TRANSMISSION PROBLEM. ACURA HAS A TSB OUT FOR THIS B15-034, BUT WON'T APPLY IT UNTIL THE PROBLEM APPEARS. HAVING YOUR VEHICLE SHIFT INTO NEUTRAL IN A HIGH SPEED ENVIRONMENT IS EXTREMELY DANGEROUS. TSB B15-034 NEEDS TO BE A RECALL BEFORE THEIR MDX SHIFTS INTO NEUTRAL DRIVING ON THE HIGHWAY AND THEY BECOME IMMOBILIZED AND PEOPLE ARE KILLED AS A RESULT…9/22/15 *BF

11.    Despite knowledge of the Defect and its dangerous associated safety risk, Honda failed to issue a comprehensive and effective recall, fix the vehicles, and continued to sell vehicles with the Defect.

12.    The Defect presents a safety risk for Plaintiff, other owners and lessees of Class Vehicles, and the general public because, upon information and belief, when the vehicles suddenly decelerate or stop in the middle of the road, they subject themselves and other vehicles to a high risk of collision and personal injury.

13.    In the United States, Honda provides warranty coverage for Class Vehicles under one or more warranties.  Honda currently provides a New Vehicle Limited Warranty, which covers vehicles under the Acura brand for 4 years or 50,000 miles and a Powertrain Limited Warranty for powertrain components for 6 years or 70,000 miles.

14.    Based on pre-production testing and design failure mode analysis, early complaints to dealers and warranty claims, replacement part orders, Service

Bulletins and complaints made to Defendant Honda USA and NHTSA, Defendants were aware of the Defect in Class Vehicles but continued to misrepresent the ability of the Class Vehicles to provide safe, reliable transportation, and further concealed the Defect and its effects from Plaintiff and other owners and/or lessees of Class Vehicles.

15.     Because the Defect was present at the time of sale or lease of the Class Vehicles and concealed from Plaintiff and other owners and/or lessees of Class Vehicles, Honda was required to repair the Class Vehicles under the terms of the warranties free of charge. Yet, on information and belief, Honda has failed to permanently repair or replace the defective parts free of charge under the warranties.

16.     Knowledge and information regarding the Defect and the associated safety risk was in the exclusive and superior possession of Defendants and their authorized dealers and was not provided to Plaintiff and other owners and/or lessees of the Class Vehicles, who could not reasonably discover the Defect through due diligence. Despite Defendants' knowledge, Honda continues to sell these defective vehicles, has failed to disclose the existence of the Defect to directly to consumers, Plaintiffs and other owners and/or lessees of Class Vehicles, has not issued a full, comprehensive and effective recall and has not remedied the Defect and/or compensated Class Vehicle purchasers, owners, or lessees for this material defect.

17.     The nature of the Defect is such that it manifests both within and outside the warranty periods. Because knowledge and information about the existence and scope of the Defect was within the exclusive and superior possession of Defendants and their authorized dealers, Defendants concealed this information in order to continue to sell more Class Vehicles and to wrongfully transfer costs of repair or replacement to Plaintiff and other owners and/or

lessees of Class Vehicles.

18.    No reasonable consumer expects to purchase or lease a vehicle that contained a Defect which creates a safety hazard which causes the vehicle to fail to accelerate, stall, throw itself into neutral or "limp mode," or shut down while being driven.  The Defect is material to Plaintiff and other owners and/or lessees of Class Vehicles because when they purchased or leased their Class Vehicles, they reasonably expected that they would be able to press on the accelerator and have the vehicle respond appropriately without suddenly decelerating, going into neutral, stalling, or shutdown completely.  Had Defendants disclosed the Defect, Plaintiff and other owners and/or lessees of Class Vehicles would not have purchased or leased their Class Vehicles, or would have paid less for their Class Vehicles.

## THE PARTIES

**Plaintiff Roby Partovich**

19.    Plaintiff Roby Partovich is a California citizen who resides in Oceanside, California.

20.    On or around December 17, 2018, Plaintiff Partovich purchased a new 2019 Acura MDX from Ball Acura, an authorized Acura dealer in National City, California.

21.    Plaintiff Partovich purchased his 2019 Acura MDX vehicle primarily for personal, family, or household use.

22.    The safety and reliability of the vehicle were important factors in Plaintiff Partovich's decision to purchase his vehicle. Before making his purchase, Plaintiff Partovich reviewed the Acura brochure for the MDX as well as the Monroney Sticker or "window sticker" which listed official information about the vehicle. Plaintiff Partovich believed that the Acura MDX would be a

safe and reliable vehicle.

23.    Honda's misstatements and omissions were material to Plaintiff Partovich. Had Honda disclosed its knowledge of the Defect before Mr. Partovich purchased his MDX, Plaintiff Partovich would have seen and been aware of the disclosures. Furthermore, had he known of the Defect, Plaintiff Partovich would not have purchased his vehicle or would have paid less for it.

24.    On or around March 7, 2020, with approximately 6,200 miles on the odometer, while driving on the highway using the cruise control, the MDX decelerated suddenly from 75 miles per hour to 45 miles per hour twice in the span of twenty minutes.  On March 10, 2020, he took the vehicle to Hoehn Acura, located in Carlsbad, California, a dealer authorized by Honda to perform repairs and services under the New Limited Vehicle Warranty and Powertrain Warranty provided to Mr. Partovich when he purchased his car.   He was told nothing was wrong with the car and no repairs were attempted or performed.

25.    On or around March 14, 2020, with approximately 6,300 miles on the odometer, Mr. Partovich's MDX suddenly decelerated to a stop without him applying the brake while being driving at a very low speed in a parking lot.  On March 17, 2020, he took the vehicle to Hoehn Acura once more.  He was again told nothing was wrong with the car and no repairs were attempted or performed.

26.    Following the dealership visit, Plaintiff Partovich continues to experience the Defect.

27.    At all times, Plaintiff Partovich, like all Class Members, has attempted to drive his Acura MDX in a manner that was both foreseeable, and in which it was intended to be used.

**Defendants**

28.    Defendant American Honda Motor Company, Inc. is a corporation organized and in existence under the laws of the State of California and

registered to do business in the State of California. Honda USA is headquartered at 1919 Torrance Boulevard, Torrance, California 90501. Honda USA is responsible for sales, marketing, service, distribution, import and export of Honda and Acura branded products, including vehicles and parts, in California, and in the United States. Honda USA is also the warrantor and distributor of Honda and Acura vehicles, including the Class Vehicles, in California and throughout the United States.  Honda USA has a division devoted to these operations related to the Acura brand.

29.     Defendant Honda Motor Company, Ltd. is a corporation founded in 1958 under the laws of Japan and headquartered in Tokyo, Japan. Honda Japan manufacturers and distributes automobiles, as well as parts for Honda and Acura branded vehicles, and is the parent company of Honda USA and all other Honda-branded corporations headquartered California.  Upon information and belief, the design and manufacture of Class Vehicles, including their component systems and any repairs or service necessary, is the primary focus of Honda Japan.

30.     Defendants, through their various entities, design, manufacture, market, distribute, service, repair, sell, and lease passenger vehicles, including the Class Vehicles, nationwide and in California.  Defendants work together on the drafting and distribution of all technical bulletins regarding Acura vehicles to Honda-authorized dealers, as well as in training Honda-dealer technicians in the correct procedures to maintenance, service, and repair Acura vehicles.

31.     At all relevant times, Defendants were and are engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in San Diego County, California and throughout the United States of America.

CLASS ACTION COMPLAINT

**JURISDICTION**

32.     This is a class action.

33.     Members of the proposed Class, which includes citizens of all 50 states, are citizens of states other than California, where Honda USA is incorporated and headquartered.

34.     On information and belief, aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

35.     Accordingly, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

**VENUE**

36.     Defendants, through their businesses of marketing, distributing, selling, and leasing the Class Vehicles, have established sufficient contacts in this district such that personal jurisdiction is appropriate. Honda is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

37.     Venue is proper in this Court because Plaintiff Partovich's Declaration, as required under California Civil Code section 1780(d) but not pursuant to *Erie* and federal procedural rules, reflects that a substantial part of the events or omissions giving rise to the claims alleged herein occurred, or a substantial part of property that is the subject of this action is situated, in San Diego County, California. It is attached as Exhibit 1.

**FACTUAL ALLEGATIONS**

38.     Honda has thousands of authorized dealerships across the United States and controls the distribution of automobiles, parts, services, and warranty repairs of Acura-branded vehicles throughout the United States, all of which are under Honda's control.  Honda authorizes these distributors and dealerships to sell Acura vehicles, parts, and accessories and to service and repair Acura

1  vehicles using Acura parts.  Its operating income through those distributors and
2  dealerships are included in the $143.1 billion in Honda revenue for the fiscal
3  year ended March 31, 2019.[3]

4  39.  Honda sells Acura vehicles to its authorized distributors and
5  dealerships, which in turn sell those vehicles to consumers.  After these
6  dealerships sells cars to consumers, including the Plaintiffs and Class members,
7  they purchase additional inventory from Honda to replace the vehicles sold,
8  increasing Honda's revenues.  Thus, Plaintiffs' and Class Members' purchase of
9  Class Vehicles accrues to the benefit of Honda by increasing its revenues.

10  40.  In a traditional setup for vehicles with gasoline engines, there are
11  physical connections between the gas pedal and the throttle body to limit or
12  expand the amount of air going into the engine.  The more one presses the gas
13  pedal, the more air enters the engine, where sensors detect the air and increase
14  the throttle position.  This then sends an instruction to the fuel injectors to
15  provide more fuel to the engine, which generates more power and ultimately,
16  accelerates the vehicle.[4]

17  41.  By contrast, the Class Vehicles have Honda's Throttle System,
18  which is a throttle by wire system.  Here, instead of cables, a sensor is attached
19  to the gas pedal and measures how far it has been depressed.  That measurement
20  is sent to the throttle control computer, which then sends a command to the
21  throttle body to limit or expand the amount of air going into the engine.  Both the
22  ECM and the TCM also send information to the throttle control computer, so that

23  _____
   [3] *See* "Honda Revenue Grows in FY2019, Will It Sustain In FY 2020?,"
24  (May 15, 2019),
   https://www.forbes.com/sites/greatspeculations/2019/05/15/honda-revenue-
25  grows-in-fy-2019-will-it-sustain-in-fy-2020/#50806615731b (last visited March
   30, 2020).

26  [4] *See* Dunn, Brent, "What is Throttle By Wire?", Autobytel.com, available
27  at https://www.autobytel.com/car-ownership/technology/what-is-throttle-by-
   wire-122835/

28

CLASS ACTION COMPLAINT

the throttle can be adjusted during gear changes or change the way the throttle reacts when the gas pedal is pressed in order to accommodate fuel efficiency.[5]

42.    If the throttle is stuck open, a vehicle can be thrown into neutral, or a "limp mode" in order to prevent engine, transmission, or other vehicle damage. In contrast, if the throttle does not respond to the command to open, it will fail to allow more air into the engine.

43.    Upon information and belief, the Class Vehicles suffer from a defect in design, manufacture, and/or workmanship where the throttle receives conflicting instructions from the gas pedal, the ECM, and/or the TCM.  In such situations, the throttle will malfunction, and either become stuck in position or otherwise fail to follow the command of the driver.  These situations cause the Class Vehicles to hesitate, stall, shut down, go into limp mode, or decelerate instead of accelerate at the command of the driver depressing the gas pedal.

44.    Class Member complaints to NHTSA, cited *infra*, demonstrate the unsafe and widespread nature of the Defect and Defendants' awareness that the Defect existed before selling the Class Vehicles to Plaintiff and Class Members.

**Honda Had Superior and Exclusive Knowledge of the Defect**

45.    Honda had superior and exclusive knowledge of the Defect and knew or should have known that the Defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the Class Vehicles.

46.    Plaintiff and Class Members are informed and believe and based thereon allege that before they purchased or leased their respective Class Vehicles, and since pre-production road testing of the 2016 MDX beginning in late 2014, if not earlier, Honda knew about the Defect through sources not available to consumers, including pre-release testing data, such as design mode

---

[5] *Id.*

CLASS ACTION COMPLAINT

failure analysis.  Honda also was provided notice by early consumer complaints to Honda and its dealers, testing conducted in response to those complaints, high failure rates and replacement part sales data, and other aggregate data from Honda dealers about the problem. Publicly available facts set forth *infra* further confirm Honda's knowledge.

47.     Honda is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Honda conducts tests, including pre-sale durability testing, on vehicle components such as control modules in Class Vehicles, to verify the parts are free from defect and align with Honda's specifications.  Further, pre-production testing on vehicles and their components is designed to be harsher than expected "real-world" driving experience of consumers.  Such testing necessarily includes use of the gas pedal at various speeds, including highway speeds. Thus, Honda knew or should have known that Class Vehicles experience a failure to acceleration, shifting in neutral, sudden stalls, and shutdowns while being driven.

48.     Additionally, Honda should have learned of this widespread defect from the sheer number of reports received from dealerships and from customer complaints directly to Honda.  Honda's customer relations department collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

49.     Indeed, as of July 2015, a number of Class Members had already reported the Defect to various Acura authorized dealerships.

50.     Honda analyzes and collects warranty and repair data submitted by its dealerships in order to identify trends in Acura vehicles. It is Honda's policy that when a repair is made under warranty, the dealership must provide Honda

1   with detailed documentation of the problem and the repair employed to correct it
2   in order to be reimbursed. Dealerships have an incentive to provide detailed
3   information to Honda, because they will not be reimbursed for any repairs unless
4   the justification is sufficiently detailed.

5       51.    Honda quietly issues notifications to its dealerships – but not
6   consumers – Technical Service Bulletins ("TSBs.") Through TSBs, Honda
7   provides directions to its authorized Acura dealerships for how to respond to
8   customer complaints and requests for repairs.  TSBs are only issued after Honda
9   has discovered an issue, investigated, and designed a repair, mitigation, or other
10  response.  The issuance of a TSB thus reflects months, or even a year's worth of
11  knowledge of a defect.

12      52.    On July 8, 2015, Honda issued Service Bulletin 15-034, titled
13  "Product Update: Vehicle shifts into Neutral and MIL Comes On with DTC
14  P0657" that applied to the 2016 Acura MDX. This TSB stated that "[w]hile
15  driving, the vehicle shifts into Neutral, the transmission indicator comes and
16  DTC P0657 (actuator supply voltage circuit/open) is stored.  The driver will not
17  be able to select any other gear until the vehicle is turned off and restarted."  The
18  TSB directed technicians to "[u]pdate the PGM-FI software and the TCM
19  software, clear any DTCs, and do the PCM idle learn procedure."[6] On
20  information and belief, the software update described in this TSB failed to
21  resolve the Defect.

22      53.    On September 3, 2019, Honda issued Service Bulletin B18-045,
23  titled "Update: F-CAN Bus Connected Unit Check" that applied to the 2019
24  Acura RDX and 2019 Acura MDX Sport Hybrid.  "F-CAN" refers to the Fast
25  Controller Area Network which passes information between computers such as
26  the ECM/PCM and other control modules.  This TSB described some

27  _____
    [6] "PGM-FI" stands for "programmed fuel injection."  "DTCs" stands for
28  "Diagnostic Trouble Codes."   "PCM" stands for "Powertrain Control Module."

1    troubleshooting procedures for a loss of communications such that "certain
2    control units that may be reported as Not Available in the Status column even
3    though they are properly communicating."  On information and belief, these
4    procedures failed to resolve the Defect.

5        54.    On January 29, 2019, Honda recalled 2016-2018 Acura MDX
6    vehicles due to slow flow from the fuel pumps causing vehicle stalls.  The repair
7    was to update the fuel injection engine control unit software ("FI-ECU"), and in
8    some cases, replace the fuel pump.  Upon information and belief, the updated FI-
9    ECU software was included in 2019 and 2020 MDX models.  On information
10   and belief, this repair failed to resolve the Defect.

11       55.    The July 8, 2015 Service Bulletin 15-034, September 3, 2019
12   Service Bulletin B18-045, and January 29, 2019 recall of 2016-2018 Acura
13   MDX vehicles clearly show that Honda knew about the defect at least as early as
14   July 8, 2015, and likely months earlier since it take a large vehicle manufacturer
15   like Honda several months to formulate, draft and implement a Service Bulletin.

16       56.    On information and belief, no Class Member has received a repair
17   from Honda or any Honda authorized dealer which permanently resolves the
18   Defect.

19       57.    Class Members have complained for years about the Defect and its
20   associated safety risk, both before and after the recall.

21       58.    Acura specific forums such as Acurazine.com have registered many
22   complaints from the owners and lessees of both MDX and RDX vehicles about
23   the Defect.

24
25
26
27
28

CLASS ACTION COMPLAINT

59.    Here is a sample of complaints on just one thread regarding the loss of power while accelerating in 2019 RDX vehicles [7]:







_____

[7] https://acurazine.com/forums/3g-rdx-problems-fixes-458/limp-mode-2019-spec-971802/

1
2
3
4
5
6
7
8
9
10
11
12
13



14      60.     Reviews on Edmunds.com of the MDX also report issues with

15  acceleration.

16  ★★★☆☆ **This SUV almost got us hurt**

17  Carlos, 08/27/2016
    SH-AWD 4dr SUV AWD (3.5L 6cyl 9A)

18

19  55 of 59 people found this review helpful

20  We got a new 2016 MDX and before it hitting 3 months, our new MDX almost got my whole family hurt (or
    could have been worst). While driving on the freeway it just suddenly stop while I was changing lane.
21  Luckily the car behind us managed to stop and avoid hitting us. I tried to restart the engine and when it
    did, it move very slow and roughly to the shoulder of the freeway. After restarting the engine, ALL THE
22  WARNING LIGHTS  came ON including Break System Failure or Malfunction. It scared my whole family
    and it was the most horrible UNSAFE DRIVE HOME for hours worrying if we still have break system
23  working. Dropped of the MDX at our local dealership and until now (about 9 days now) still trying to figure
    things out.. We feel like this vehicle is just so UNSAFE now and it basically traumatized my whole family
24  being in this MDX.  Will review lemon law and make sure we don't become the CRASH TEST DUMMIES
    for this. And I hate hearing them say "Oh it must be because of the computers and technology"!.... We got
25  this vehicle because of the SAFETY AND TECHNOLOGY advertised by Acura.

26
27
28

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

★☆☆☆☆ **Transmission problems already!**

Disappointed buyer, 03/05/2018
SH-AWD w/Technology Package 4dr SUV AWD (3.5L 6cyl 9A)

37 of 40 people found this review helpful

I purchased a new, 2017 MDX SH AWD with technology package in February 2018 from Frankel Acura in Maryland and this has been my experience:  The salesperson, Mark was helpful.  The car had 378 miles on it when I purchased it.  Immediately after driving off the lot, I noticed the timing of the transmission seemed to be off. I was pressing the gas, however the car was hesitating and then it would shift into 1st or 2nd gear, but the shifting was rough, enough to jerk you forward when the car finally moved.  When I took the car to Frankel Acura for diagnostics and repair, I was told the vehicle was operating properly. I was also told that I would have to deal with the issue until Acura issued a software update for the transmission. The dealership offered no further action regarding the transmission. I was also  told that once the car learned my driving habits, the transmission shifting might get better. Needless to say, I am disappointed in the performance of the vehicle and the dealership.

★☆☆☆☆ **Paid over 50 grand for a LEMON**

Dr. Khan, 07/06/2017
SH-AWD w/Technology Package 4dr SUV AWD (3.5L 6cyl 9A)

41 of 46 people found this review helpful

Please read about the problems with transmission. Our transmission went out at 3000+ miles on city driving. On calling we were told by the dealer they have no loaner cars due to airbag recall issues. Suddenly stalls and almost got my wife into a terrible accident. P0730 code came on and we are unable to use this expensive car after just 3000 miles. Buy at your own risks. Sales team was excellent but the Cerritos Acura dealership was rude once we sought help for this terrible manufacturing defect in transmission.

★☆☆☆☆ **2017 MDX transmission safety nightmare**

One Driver, 07/13/2017
4dr SUV (3.5L 6cyl 9A)

21 of 25 people found this review helpful

My brand new MDX almost killed me yesterday. It drove jerky from day one. It is not just "me getting used to a 9-speed transmission" like the dealer is telling me. It does shift jerky and frequently slows down independent of what I am doing on the gas or brake. Will occasionally jerk strongly and repeatedly like it is about to stall when driving 35mph for several miles with no need for gears to shift at all. I took it back to dealer within 2-3 weeks of purchase. They claimed could find nothing wrong. It continued as before and before I could get back to the dealer a week or so later this happened: Stuck in stop and go highway traffic for half hour. Every press on the gas was herky jerky but suddenly when traffic finally started to move freely, a press on the gas produced nothing but RPM's revving. I took my foot off the gas and tried again 2-3 times. I put on my flashers and barely rolled to the shoulder through the swerving traffic. I turned off the car and restarted to make my way jerkily back home. Second trip to dealer is so far producing the same bs that they can find no problem. I just found several stories online of same problem. Unless they fix this I am not driving this death machine.

CLASS ACTION COMPLAINT

61.     In addition, Honda monitors customers' complaints made to NHTSA. Federal law requires automakers like Honda to be in close contact with NHTSA regarding potential automobile defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act,* Pub. L. No. 106-414, 114 Stat.1800 (2000).

62.     Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Honda USA is Honda Japan's agent to interface with NHTSA to monitor complaints, respond to inquiries, conduct recalls, and assist NHTSA with investigations. Thus, Honda knew or should have known of the many complaints about the Defect logged by NHTSA Office of Defect Investigation (ODI), and the content, consistency, and large number of those complaints alerted, or should have alerted, Honda to the Defect.

63.     The following are examples of over 60 complaints from owners and lessees of the Class Vehicles concerning the Defect available through NHTSA's website, www.safercar.gov. Spelling and grammar mistakes appear as in original.

    a.  **DATE OF INCIDENT:**   June 21, 2016
        **DATE COMPLAINT FILED:**   July 3, 2016
        **NHTSA/ODI ID:**   10882333
        **VEHICLE:**   2016 Acura MDX
        **SUMMARY:** WE BOUGHT A BRAND NEW 2016 ACURA MDX MODEL AND WITHIN FEW MONTHS, STARTED HAVING TRANSMISSION PROBLEMS. THE CAR WOULD START

STALLING IN THE MIDDLE OF THE ROAD AND COULD NOT ACCELERATE TO PICK UP SPEED. THIS HAPPENED IN A MAJOR HIGHWAY WHEN IT SUDDENLY STALLED AND COULD NOT PICK UP SPEED. FELT LIKE HAVING NO CONTROL OF CAR SPEED. THE D LETTER ON DASHBOARD STARTED FLASHING AND ALSO SHOWED BLIND SPOT MONITOR REPORT FAILURES. TOOK THE CAR TO DEALER FIRST TIME AND THEY COULD NOT FIND ANYTHING AND SAID IT SHOULD NOT HAPPEN AGAIN. THE SECOND TIME HAPPENED IN A SHORT PERIOD OF TIME. TOOK IT TO DEALER AND HE SAID ITS FIXED AND KEPT CAR FOR FEW DAYS. WITHIN VERY FEW DAYS THE PROBLEM HAPPENED AGAIN. APART FROM THIS, THE CAR WHEN PUT IN DRIVE FROM PARK WOULD START GOING BACKWARDS WITH LITTLE UPHILL WHICH ALMOST GOT ME IN AN ACCIDENT ON THE HIGHWAY. I FELT VERY UNSAFE TO DRIVE THE CAR ON A HIGHWAY DUE TO THESE SAFETY CONCERNS AS THERE WAS A POTENTIAL FOR ACCIDENTS AND INJURY TO SOME ONE. WE DEMONSTRATED THIS DEALER THE THIRD TIME. WE CALLED CLIENT SERVICES OF ACURA MANUFACTURER AND OPENED A CASE. THE REGIONAL MANAGER MENTIONED THEY WILL LOOK INTO THE ISSUES. WE HAD A LONG ROAD TRIP PLANNED AND WE WERE DEPENDENT ON THIS CAR AS IT WAS A FAMILY CAR BUT FELT VERY UNSAFE. THE CLIENT SERVICES OF ACURA HAD COMPLETE LACK OF EMPATHY AND WAS UNWILLING TO DO ANYTHING. HE KEPT STRESSING THAT WE NEED TO PICK UP THE CAR AND RETURN THE LOANER CAR ALTHOUGH WE HIGHLIGHTED THE SAFETY CONCERNS. WE ARE COMPLETELY DISAPPOINTED WITH ACURA AND STILL FEEL UNSAFE WITH THE CAR NOT KNOWING WHAT WILL HAPPEN NEXT.

b. **DATE OF INCIDENT:**    March 15, 2020
   **DATE COMPLAINT FILED:**    March 17, 2020
   **NHTSA/ODI ID:**    11318496
   **VEHICLE:**    2017 Acura MDX
   **SUMMARY:**    WE WERE DRIVING 70MPH ON THE INTERSTATE I10 HEADED TO NEW ORLEANS WHEN OUR VEHICLE SUDDENLY AND WITHOUT WARNING LOST ACCELERATION THE DASHBOARD LITE UP LIKE A

CHRISTMAS TREE TELLING ME TO PULL OVER IMMEDIATELY AND THEN ELECTRONIC PARKING BRAKE ERROR, TRANSMISSION ERROR AND AN EMISSIONS ERROR ALL AT ONCE. THIS WAS A VERY DANGEROUS INCIDENT AND WE SOMEHOW MANAGED TO GET TO THE SMALL SIDE OF THE ROAD ON THIS BUSY INTERSTATE. IT SCARED THE BOTH US! THE MDX WOULD NOT GO INTO DRIVE OR NEUTRAL? WHILE WAITING FOR THE TOW TRUCK WE ALMOST WERE SIDE SWIPED. THIS CAR WAS PURCHASED FOR THE SAFETY FEATURES AND IT HAS REALLY CAUSED MY WIFE AND I TO LOST ALL FAITH AND NOT CANNOT DEPEND ON IT. OUR VEHICLE HAS 44K ON IT AND IT WAS EVEN A ACURA CERTIFIED PRE-OWNED INSPECTED VEHICLE. I HAVE LEARNED THERE IS A CLASS ACTION LAWSUIT FOR THIS SAME TYPE OF INCIDENT AND MODEL OF ACURA. THIS CAR IS DANGEROUS AND ACURA BETTER OWN UP TO THIS FAULTY VEHICLE. THIS NEEDS TO BE RECALLED!

c. **DATE OF INCIDENT:**    September 2, 2015
   **DATE COMPLAINT FILED:**    September 8, 2015
   **NHTSA/ODI ID:**    10762375
   **VEHICLE:**    2016 Acura MDX
   **SUMMARY:** ON 9/3/15, I WAS PULLING INTO MY GARAGE WHEN ALL THE WARNING LIGHTS ON THE DASHBOARD WENT OFF – TRANSMISSION, CHECK ENGINE, LANE DETECTION LIGHT ETC. SINCE I WAS OUT OF TIME THE NEXT MORNING, I PUT IT IN REVERSE AND DROVE DIRECTLY TO THE DEALER. THE CAR WAS IN "LIMP MODE" AND I COULD ONLY DRIVE 35-40 MPH.

   I SHOWED THE TECH IN THE SERVICE DEPT. ALL THE WARNING LIGHTS GOING OFF, AND HE SAID HE HAD NEVER SEEN ANYTHING LIKE THIS BEFORE. HE WROTE UP A WORK ORDER WITH THE FOLLOWING INFO: INSPECT FOR CHECK ENGINE LIGHT ON, CHECK ENGINE LIGHT FLASHING AND EVERY WARNING LIGHT IN THE VEHICLE IS ON, WOULD NOT ACCELERATE OVER 35 MPH.

   THE FOLLOWING DAY I WAS CONTACTED BY THE SERVICE DEPT. AND WAS TOLD THEY COULD NOT FIND A PROBLEM;

THERE WERE NO LIGHTS ON, THEY EVEN DROVE IT FOR 40 MILES. THE SERVICE DEPT. SAID THEY ARE ONLY ALLOWED TO HOLD THE CAR FOR FIVE DAYS.

TODAY, 9/8/25 (sic) I PICKED UP THE CAR. THE DEALER'S INVOICE READS: CAUSE: LIGHT ON – 1235050 DIAGNOSTIC TROUBLE CODES/PROGRAMMED FUEL INJECTION (PGM-FI) – RETRIEVE CODES WITH THE HDS, READ DATA, 74 – WA3. INSPECTED FOR CHECK ENGINE LIGHT ON, FOUND DTC P0303 (CYLINDER # 3 MISFIRE) RECORDED FREEZE DATA AND CLEARED CODES, AT TIME OF THE INSPECTION VEHICLE WAS RUNNING PERFECTLY, TEST DROVE VEHICLE TWICE ON EXTENDED TEST DRIVES AND ENGINE RAN PERFECTLY, NO DTCS ARE RESET ANO PROBLEM IS PRESENT AT THIS TIME.

SINCE THE SERVICE DEPT. COULD NOT FIND THE PROBLEM AND FIXT IT, THIS MEANS THE CAR HAS NOT BEEN REPAIRED AND I AM DRIVING A DEFECTIVE CAR. THE NEXT TIME THE WARNING LIGHTS GO ON, I COULD BE TRAVELLING ON A CROWDED FREEWAY AT A HIGH RATE OF SPEED (WITH MY FAMILY INSIDE), THE CAR GOES INTO "LIMP MODE – 35 MPH AND AN ACCIDENT OCCURS. THIS IS A SAFETY ISSUE. HOW CAN ACURA MANUFATURE A $50,000.00 CAR AND THEIR DEALERSHIP NOT BE ABLE TO FIND THE PROBLEM AND REPAIR IT?

d.  **DATE OF INCIDENT:**    October 22, 2015
    **DATE COMPLAINT FILED:**    November 25, 2015
    **NHTSA/ODI ID:**    10807071
    **VEHICLE:**    2016 Acura MDX
    **SUMMARY:** I GOT MY 2016 ACURA MDX IN JULY. SINCE THEM, I AM HAVING TRANSMISSION PROBLEMS. OFF-THE-LINE SHIFTS ARE ERRATICS, DEPENDING ON HOW MUCH THROTTLE I GIVE THE ENGINE. GIVE IT 3/4 THROTTLE AND ACCELERATION IS GREAT, BUT MILEAGE SUFFERS BADLY. GIVE IT ANY LESS THROTTLE AND ACCELERATION IS MEAGER, PLUS THE ENGINE REVS VERY HIGH BETWEEN SHIFTS.

ONE TIME, I WAS PULLING AWAY FROM A STOPLIGHT

AFTER SLOWING TO NEARLY A FULL STOP (THE LIGHT JUST CHANGE AS I APPROPACHED), I PRESSED 1/2 WAY ON THE ACCELERATOR AND THE ENGINE BOGGED TO NEARLY ZERO RPMS. I THOUGHT IT DIED. I LET UP AND PRESSED DOWN AGAIN AND IT RETURNED TO NORMAL.

MERGING ON THE HIGHWAY IS ALSO VERY DANGEROUS AND SCARY. AS I HIT THE GAS TO ACCELERATE ON THE ON-RAMP, THE ENGINE HESITATES SO BADLY, I NEARLY RUN OUT OF RAMP. PASSING ON THE HIGHWAY IS THE SAME, UNLESS I PRESS THE THROTTLE TO THE FLOORBOARD.

ANOTHER TIME, I FLOORED THE THROTTLE ON THE HIGHWAY WHILE GOING 50 MPH, TO PASS A CAR. THE TRANSMISSION DOWN SHIFTED THEN REVVED UP TO 5,000 RPM AND STAYED THERE, EVEN AFTER I TOOK MY FOOT OFF THE GAS PEDAL! I HAD TO FLOOR THE PEDAL AGAIN TO COAX THE TRANS TO UP-SHIFT.

I COMPLAINED TO ACURA HQ. THEY TOLD ME TO TALK TO MY DEALER. I SPOKE TO MY DEALER, AND THEY SAID THAT'S JUST HOW THE TRANSMISSION IS.

SO DISAPPOINTED WITH THE CAR. I SUSPECT BAD PROGRAMMING IN THE TRANSMISSION ON ACURA'S PART. THEY NEED TO FIX THIS PROBLEM BEFORE SOMEONE DIES IN A HIGHWAY TRAFFIC ACCIDENT.

e. **DATE OF INCIDENT:**    July 29, 2019
   **DATE COMPLAINT FILED:**    August 1, 2019
   **NHTSA/ODI ID:**    11240989
   **VEHICLE:**    2019 Acura RDX
   **SUMMARY:** I WAS ACCELERATING HARD ONTO A HIGHWAY ON RAMP WHEN THE CHECK ENGINE LIGHT TURNED ON AND THE CAR WENT INTO "LIMP" MODE. I DROVE AT 40 MILES PER HOUR TO THE NEXT EXIT AND TURNED OFF THE CAR AS INSTRUCTED ON THE MANUAL. THE CAR RETURNED TO NORMAL OPERATION AFTERWARDS ALTHOUGH SPECIAL CARE WAS TAKEN TO MINIMIZE STRONG ACCELERATION.

f. **DATE OF INCIDENT:**    October 25, 2019
**DATE COMPLAINT FILED:**    October 16, 2019
**NHTSA/ODI ID:**    11271078
**VEHICLE:**    2019 Acura RDX
**SUMMARY:** ON WEDNESDAY, OCT 16, 2019, I WAS DRIVING THIS RDX FOR ABOUT 2 HOURS, AND WAS GOING SOUTH ON N CAROLINA RT #171 IN A STEADY RAIN ON A FLAT ROAD. I DROVE BEHIND A 18 WHEEL LOG TRUCK FOR 10-15 MINUTES AT 50-55 MPH BEFORE CONFIRMING THERE WAS NO VEHICLES COMING THE OTHER WAY. WHEN IT WAS CLEAR FOR 1-2 MILES, I FLOORED THE ACCELERATOR TO PASS THE LOG TRUCK. THE RDX LEAPED FORWARD AT FIRST, BUT HALFWAY PAST THE LOG TRUCK THE VEHICLE LOST POWER AND SLOWED TO 35-40 MPH OR SO (MAYBE SLOWER, AS I AM GUESSING--- I WAS NOT LOOKING AT THE DASH).

I WAS SCARED THAT I COULD NOT COMPLETE MY PASS OF THE TRUCK. FORTUNATLEY, AFTER 5-10 SECONDS, THE TRUCK DRIVER NOTICED SOMETHING WAS AMISS, AND HE SLOWED DOWN TO LET ME PASS AT MY SLOWER SPEED. I PULLED OFF AND WAS GRATEFUL FOR TWO THINGS. FIRST THAT NO ONE WAS COMING THE OTHER WAY, AS A HEAD ON COLLISION COULD HAVE TAKEN PLACE. SECOND, THAT THE TRUCK SLOWED TO PERMIT ME TO PULL OFF ON THE RIGHT SHOULDER. THIS TOOK PLACE ABOUT 220PM.

AFTER PULLING TO THE SHOULDER, AND LEAVING THE RDX RUNNING, I WAITED FOR SEVERAL MINUTES, AND TRIED TO PULL FORWARD. THE LIMITED POWER CONDITION REMAINED. AND THE ORANGE ENGINE SYMBOL APPEARED WHEN I LOST POWER, BUT I WASN'T LOOKING AT THE DASH.

AFTER SEVERAL MORE MINUTES, I TURNED THE CAR OFF AND WAITED FOR SEVERAL MORE MINUTES. WHEN THE CAR RESTARTED, THE SYMBOL WAS GONE, AND REGULAR POWER HAD RETURNED. I DROVE ABOUT 100 YARDS, AND THEN RE-ENTERED RT#171 WHEN THERE WAS NO ONE COMING BEHIND ME. THE RDX OPERATED FINE THEN AND

1   I COMPLETED A 3.5 HOUR DRIVE TO MYRTLE BEACH. I
2   DROVE NORMAL FROM THERE TO NAPLES FL OVER THE
    NEXT 5 DAYS WITH NO ISSUES.
3
4   BUT, I DIDN'T TRY TO ACCELERATE BY DEPRESSING THE
    PEDAL TO THE FLOOR IN THE RAIN. THERE WAS A CLEAR
5   SAFETY INCIDENT AT 220PM OCT 16TH.

6   g.  **DATE OF INCIDENT:**    December 28, 2019
7       **DATE COMPLAINT FILED:**    December 28, 2019
        **NHTSA/ODI ID:**    11291765
8       **VEHICLE:**    2019 Acura RDX
9       **SUMMARY:** WE TURNED ONTO THE ON-RAMP OF 140 WEST
        IN ARKANSAS AT EXIT 58 HEADING WEST. I ACCELERATED
10      TO GET UP TO SPEED TO MERGE ONTO THE HIGHWAY.
11      WHEN I REACHED 70 MPH THE CAR STOPPED
        ACCELERATION AND VERY RAPIDLY SLOWED TO 20 MPH
12      IN FRONT OF MULTIPLE CARS AND SEMI TRUCKS. I WAS
13      LUCKY TO HAVE BEEN MISSED BY THE TRAFFIC BEHIND
        US AND WAS ABLE TO GET TO THE RIGHT SHOULDER. THE
14      CAR WOULD NTO ACCELERATE PAST 10-20MPH. WE
15      LIMPED TO THE NEXT EXIT AND FOUND A PARKING LOT. I
        TURNED THE CAR OFF AND BACK ON AND IT SEEMED TO
16      BE WORKING CORRECTLY AGAIN. MY ENTIRE FAMILY
17      COULD HAVE EASILY BEEN KILLED! DURING THE
        INCIDENT THE CHECK ENGINE LIGHT CAME AND ON AND
18      REMAINED ON UNTIL TURNING THE CAR OFF AND BACK
19      ON.

20  h.  **DATE OF INCIDENT:**    February 22, 2019
21      **DATE COMPLAINT FILED:**    January 30, 2020
        **NHTSA/ODI ID:**    11202020
22      **VEHICLE:**    2016 Acura MDX
23      **SUMMARY:** WHEN DRIVING AT HIGHWAY SPEEDS FOR AT
        LEAST A HALF HOUR AND ATTEMPTING TO ACCELERATE,
24      THE ENGINE SPEED WILL DROP TO IDLE AND WILL NOT
25      RESPOND TO ACCELERATOR PEDAL MOVEMENT FOR
        SEVERAL SECONDS. WHEN THIS AHPPENS, THERE ARE NO:
26      WARNINGS, LIGHTS, OR MESSAGES AND NO FAULT CODES
27      ARE STORED IN ANY OF THE CONTROL MODULES. THIS
        HAS NEVER HAPPENED WHEN USING CRUISE CONTROL.
28

CLASS ACTION COMPLAINT

THIS HAS HAPPENED ON AT LEAST 9 DIFFERENT TRIPS. THIS IS AN EXTREMELY DANGEROUS CONDITION THAT HAS NEARLY RESULTED IN AOTHER VEHICLE IMPACTING OUR FROM BEHIND, DUE TO THE RAPID DECELERATION.

i.  **DATE OF INCIDENT:**    November 10, 2019
    **DATE COMPLAINT FILED:**    December 2, 2019
    **NHTSA/ODI ID:**    11286445
    **VEHICLE:**    2016 Acura MDX
    **SUMMARY:** NOVEMBER 10, 2019 TRAVELING ON HIGHWAY AT ~65 MPH, PRESSED ACCELERATOR TO PASS CAR AND VEHICLE WOULD NOT SPEED UP…FLET LIKE THE CAR WAS IN NEUTRAL. AFTER ABOUT 7 TO 10 SECONDS THE TRANSMISSION FINALLY KICKED IN AND THE CAR ACCELERATED. IF THIS HAPPENED ON A 2 LANE ROAD THE LACK OF TRANSMISSION DELIVERING POWER TO WHEELS COULD HAVE RESULTED IN A HEAD ON COLLISION. SERVICE APT SCHEDULED WITH ACURA DEALERSHIP WHERE PURCHASED AND WAS TOLD THEY COULD FIND NO 'CODES' OR ALERTS IN CARS COMPUTER AND THAT THEY FOUND NOTHING WRONG. THE DID SAY THEY REPROGRAMMED THE TRANSMISSION SOFTWARE…BUT THEY HAVE DONE THAT 2 OTHER TIMES. CAR HAS ONLY 35K MILES ON IT AND WE HAVE BROUGHT CAR INTO ACURA DEALERSHIP 4 TIMES TO ADDRESS THE HARSH SHIFTING OF TRANSMISSION AND TOLD THEM EACH TIME WE FELT IT WAS A SERIOUS SAFETY CONCERN. THE ABOVE INCIDENT OF NO POWER WHEN ATTEMPTING TO PASS ON HIGHWAY IS THE FIRST TIME THAT HAS HAPPENED..BUT A IS A VERY SERIOUS CONCERN. WE WERE TOLD FOR THE 3RD TIME THAT THE HARSH SHIFTING AND GEAR-WARNDERING WAS A 'CHARACTERISTIC' OF THIS MAKE / MODEL CAR AND THAT ACURA HAS BEEN TRYING TO ADDRESS THE ISSUE WITH TRANSMISSION SOFTWARE UPDATES. I HAVE SEEN MANY ONLINE COMPLAINTS OF THE "GEAR-WANDERING" TRANSMISSION ISSUE ONLINE AND HAVE ALSO READ SIMILAR SAFETY COMPLAINTS OF CAR LOSING TRANSMISSION POWER AT HIGHWAY SPEEDS. PLEASE THOUGHTFULLY REFIEW THIS COMPLAINT AND CONTACT ME IF YOU NEED ADDITIONAL INFORMATION. WE FIRMLY BELIEVE THAT THE KNOWN REPORTED ISSUES

OF THE 2016 ACURA MDX SHAWD TRANSMISSION PROBLEMS ARE A HUGE SAFETY ISSUE. THIS 7 SEATER SUV IS DRIVEN BY MANY FAMILIES!

j.   **DATE OF INCIDENT:**   November 14, 2019
     **DATE COMPLAINT FILED:**   January 30, 2020
     **NHTSA/ODI ID:**   11302032
     **VEHICLE:**   2020 Acura RDX
     **SUMMARY:** I DRIVE A 2020 ACURA RDX HAVING 1,840 MILES. WHILE DRIVING ON THE HIGHWAY ON THE TWO SEPARATE OCCASIONS (APPROXIMATELY SEVERAL MONTH APART), MY CAR HAD SUDDENLY DECELERATED. MY FOOT WAS NOT ON THE BREAK AT ALL. THE CAR WOULD NOT ACCELERATE WHEN APPLYING MY FOOT ON THE ACCELERATOR. FORTUNATELY THERE WAS STILL ENOUGH FORWARD MOTION IN THE CAR FOR ME TO BE ABLE TO PULL OVER TO THE SIDE WITHOUT INCIDENT. AFTER A FEW SECONDS, I STEPPED ON THE ACCELERATOR AGAIN AND THE CAR HAD RETURNED TO NORMAL OPERATION.

I BROUGHT THE CAR IN TO THE DEALERSHIP FOR SERVICE. THEY COULD NOT FIND OR DUPLICATE THE PROBLEM RELATED TO MY EXPERIENCES. I GAVE THEM COPIES OF MY INTERNET SEARCHES SHOWING OTHER DRIVERS' COMPLAINTS HAVING SIMILAR "LIMP MODE" EXPERIENCES. THE DEALERSHIP CLAIMS THEY ARE NOT AWARE OF THIS PROBLEM AND OF ANY COMPLAINTS. I FIND THIS RESPONSE ABSOLUTELY FRUSTRATING BECAUSE THE SAFETY OF MY FAMILY AND FRIENDS ARE AT STAKE. FOR NOW, I AM LIMITING MY DRIVING TO WHAT IS ONLY NECESSARY UNTIL THIS DEFECT IS RESOLVED. I AM ALSO CONSIDERING OTHER OPTIONS.

k.   **DATE OF INCIDENT:** January 3, 2020
     **DATE COMPLAINT FILED:** January 13, 2020
     **NHTSA/ODI ID:** 11299118
     **VEHICLE:**   2019 Acura RDX
     **SUMMARY:** MY BRAND NEW 2019 ACURA RDX THAT HAD 9200 MILES ON IT SHUT DOWN ON ME ON THE FREEWAY. IT WAS RAINING AND I PULLED OUT TO PASS, GOING ABOUT

75 MPH, AND IT WENT INTO WHAT I NOW KNOW IS LIMP MODE AND THE ENGINE LIGHT FLASHED ON AND OFF AND THE ENGINE WAS MAKING A DIFFERENT SOUND THAN NORMAL. I HAD SOMEONE TAILGATING ME, SO I AM LUCKY IT DIDN'T CAUSE AN ACCIDENT. GOT PULLED OVER AND CALLED THE DEALERSHIP AND THEY SAID IT NEEDED TO COME IN. THEY SPECULATE RAINDROPS GOT ON THE ENGINE FILTER (FORGET THE NAME) AND THE CAR THOUGHT IT WAS MALFUNCTIONING AND SHUT DOWN. I HADNT TURNED THE CAR OFF BECAUSE I WAS AFRAID ID BE STRANDED, SO I DON'T KNOW IF IT WOULD HAVE RESET ITSELF. STILL, I BOUGHT THIS CAR FOR DEPENDABILITY AND IVE LOST ALL TRUST. I HAD HAD THREE ACURA CARS BEFORE THIS. IVE BEEN TOLD THERES NO FIX AND ENGINEERS ARE WORKING ON IT BUT THEY COULDNT RECREATE THE SITUATION AND ITS WORKING OKAY NOW. THIS IS A SAFETY ISSUE. I COULD HAVE BEEN ON A TWO-LANE PASSING AND COULDNT GET BACK IN WHEN IT SHUT DOWN BEFORE AN ONCOMING CAR! SO I CANT DRIVE IT IN THE RAIN OR PASS NOW? THE DEALERSHIP HAD ONE OTHER RDX DO THE SAME THING AND IM READING SEVERAL ONLINE. I FEEL LIKE ITS RUSSIAN ROULETTE. DO I JUST HAVE A LEMON OR IS IT A DESIGN FLAW? IM SCARED! THE CAR IS STILL AT THE DEALERSHIP, BUT THERE'S NOTHING THAT CAN BE DONE BECAUSE EVERYTHING CHECKS OUT. THEY DON'T HONESTLY KNOW WHAT TO DO, SO THE POSSIBILITY OF BEING STRANDED OR MISSING A FLIGHT OR BEING INJURED OR KILLED IS NOT OFF THE TABLE! THEY KNOW THEY HAVE A PROBLEM BUT NOT MAKING IT PUBLIC KNOWLEDGE. IT'S A BRAND NEW DESIGN SO THERE MUST BE A FLAW.

1. **DATE OF INCIDENT:** October 30, 2019
   **DATE COMPLAINT FILED:** November 2, 2019
   **NHTSA/ODI ID:** 11277657
   **VEHICLE:**   2019 Acura RDX
   **SUMMARY:**  ON OCTOBER 30, 2019, I WAS PASSING A DUMP TRUCK ON RT. 539 IN NEW JERSEY, I HAD JUST ACCELERATED TO COMPLETE THE PASS. AS I WAS COMPLETING THE PASS, THE ENGINE LOST POWER AND

THE ENGINE MALFUCTION LIGHT BEGAN BLINKING, I'VE BEEN TOLD THE VEHICLE WENT INTO LIMP MODE. THE CAR DECELERATED AND WOULD NOT GO OVER 20 MPH. I WAS QUICKLY ABLE TO PULL ONTO THE SHOULDER TO AVOID BEING HIT BY THE TRUCK I JUST PASSED. ONCE IN THE SHOULDER, I TURNED THE VEHICLE OFF. WHEN I TURNED THE VEHICLE BACK ON, THE ENGINE MALFUCTION LIGHT WAS NO LONGER FLASHING AND THE CAR RESUMED NORMAL OPERATIONS. I CONTACTED THE LOCAL ACURA DEALERSHIP. THE DEALERSHIP KEPT THE VEHICLE FROM OCTOBER 30 UNTIL NOVEMBER 1, I WAS TOLD THAT THERE WERE NO STORED CODES ON THE VEHICLE. THE VEHICLE WAS TEST DRIVEN FOR 60 MILES, THE DEALER WAS UNABLE TO DUPLICATE THE ISSUE. THE VEHICLE WAS RETURNED TO ME, I WAS INFORMED IF THE ISSUE OCCURS AGAIN TO BRING IT BACK.

THIS VEHICLE HAD APPROXIMATELY 10,500 MILES ON IT AT THE TIME OF THE INCIDENT. THIS IS A VERY DANGEROUS PROBLEM, I NARROWLY AVOIDED BEING IN A CAR ACCIDENT.

m. **DATE OF INCIDENT:** June 1, 2019
**DATE COMPLAINT FILED:** June 27, 2019
**NHTSA/ODI ID:** 11222974
**VEHICLE:**    2019 Acura RDX
**SUMMARY:** I KNOW BY NOW THE PUBLIC MAY REALIZE ALL THE ISSUES SURROUNDING THE 2019 RDX MODEL. I PURCHASED ONE THREE MONTHS AGO.

WHILE THERE ARE A HOST OF IMPORTANT ISSUES/PROBLEMS I HAVE SEEN WITH THE VEHICLE, ALL 'APPEAR' TO BE SOFTWARE RELATED, I WOULD LIKE TO EXPRESS MY CONCERN WITH ONE SPECIFIC ISSUE.

THE THROTTLE IS DELAYED WHEN ACCELERATING FROM A STANDSTILL UP TO 10 MPH, BUT CAN ALSO HAPPEN AT HIGHER SPEEDS. THIS APPEARS TO BE DEPENDENT ON THE RPM. THIS OCCURS IN COMFORT AND SPORT MODES. THE DELAY IS ONE TO TWO SECONDS. THIS DELAY IS CRITICAL WHEN SAY, TAKING A TURN CROSSING TRAFFIC. YES,

TEHRE ARE MANY CUSTOMERS WITH THE SAME PROBLEM. I SEE THIS AS A SAFETY ISSUE, JUST AS BAD AS, FOR EXAMPLE, BRAKES NOT ACTUALLY BEING APPLIED FOR 1 OR TWO SECONDS AFTER BEING PHYSICALLY APPLIED, OR MAYBE THE CLUTCH BEING DELAYED IN A MANUAL TRANSMISSION BY TWO SECONDS. THIS WOULD NEVER BE ACCEPTABLE IN THE MARKETPLACE, BUT YET SOMEHOW AN AUTOMATIC TRANSMISSION IS OK TO BE DELAYED.

WE RDX OWNERS HAVE RECEIVED A SOFTWARE UPDATE IN FEBRUARY. I FEEL THIS IS UNACCEPTALE. IT APPEARS THE VEHICLE WAS NOT READY FOR PRODUCTION 2 YEARS AGO, AND HAS YET TO SEE CRITICAL PROBLEMS FIXED.

I HAVE BEEN TO THE DEALER WERE THEY DID A CLUTCH PROCEDURE AND PASSED ON RESULTS TO ACURA.

THIS PROCEDURE DID NOT FIX THE ISSUE, AND I HAVE PASSED THIS INFO ONTO THE DEALER.

n. **DATE OF INCIDENT:** September 20, 2018
**DATE COMPLAINT FILED:** February 27, 2020
**NHTSA/ODI ID:** 11311868
**VEHICLE:** 2017 Acura MDX
**SUMMARY:** THE TRANSMISSION IN THE CAR DECELERATES UNEXPECTEDLY, THE VEHICLE STALLS WHEN TRYING TO ACCELERATE, IT ALSO JERKS WHEN SHIFTING GEARS, ALL OF THESE ISSUES ARE EXTREMELY DANGEROUS WHEN DRIVING ON THE HIGHWAY, SWITCHING LANES AND SIMPLY DRIVING AND TRYING TO MANEUVER FROM A STOP. WE HAVE ALSO HAD A WARNING POP UP ON THE DASHBOARD TO IMMEDIATELY STOP THE VEHICLE IN THE MIDDLE OF THE STREET BECAUSE THERE IS AN ISSUE WITH THE TRANSMISSION, WE TOOK THE CAR TO THE DEALERSHIP AND THEY SAID THEY DONT SEE THE SPECIFIC CODE AND TO JUST HAVE IT TOWED NEXT TIME. I BOUGHT THIS CARE FOR SAFETY, WE JUST HAD A BABY AND NOW I AM SCARED TO DRIVE THE CAR ON A DAILY BASIS, WHAT IF IT DOESNT ACCELATE WHEN NEEDED AND WE GET HIT! WE HAVE BROUGHT THE TRANSMISSION ISSUE UP MULTIPLE TIMES; HOWEVER,

ALL WE HAVE BEEN TOLD IS THAT THIS A NORMAL THING FOR THE ACURA MDX 2017 YEAR WE HAVE. THIS IS NOT NORMAL, IT IS EXTREMELY UNSAFE.

o. **DATE OF INCIDENT:** August 14, 2018
**DATE COMPLAINT FILED:** August 15, 2018
**NHTSA/ODI ID:** 11120215
**VEHICLE:**     2017 Acura MDX
**SUMMARY:** WHEN PULLING FORWARD FROM A STOP INTO A CAR WASH, THE ZF 9-SPEED TRANSMISSION DROPPED INTO NEUTRAL WITHOUT WARNING, CAUSING THE VEHICLE TO LOSE ALL ABILITY TO MOVE FORWARD. WHEN THIS HAPPENED, ALL WARNING LIGHTS ON THE DASH ILLUMITED, INCLUDING STABILITY CONTROL, AIRBAGS, CHECK ENGINE, LANE DEPARTMENT, AND FRONTAL COLLISION SYSTEM, AND THE DIGITAL DISPLAY FLASHED THROUGH EVERY COMPONENT ON THE CAR SAYING THERE WERE SYSTEM FAILURES IN THEM ALL. THE IMMEDIATE REMEDY WAS TO STOP, PLACE THE VEHICLE IN PARK AND SHUT OFF THE ENGINE. WHEN RE-STARTED THE VEHICLE WAS ABLE TO BE DRIVEN, BUT ALL SYSTEM FAILURE LIGHTS AND WARNING LIGHTS ON THE DASH AND DIGITIAL DISPLAY REMAINED ILLUMINATED.

64.     The existence of the Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiff and other Class Members known of the Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

65.     Reasonable consumers, like Plaintiff, reasonably expect that a car will be able to accelerate without being thrown into limp mode, stalling, or simply become unresponsive to the gas pedal. They also expected that the Class Vehicles would be fit for the ordinary purpose of being capable of provide safe, reliable transportation and for accelerating when the gas pedal is depressed. Plaintiff and other owners and/or lessees of Class Vehicles further reasonably

expected that Honda would not sell or lease vehicles with known safety defects which make the vehicle stop suddenly on the highway, leaving the driver and passengers at a high risk of being in a collision, such as the Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect Honda to fail to disclose the Defect to them and to continually deny it.

### Honda Has Actively Concealed the Defect

66.    Despite knowing of the existence of the Defect, Honda has and continues to market the Class Vehicles as safe and reliable, capable of safely transporting the driver and passengers.  Multiple consumers have reported being told that despite talking to dealers and Honda's corporate Acura division itself, there is no Defect.

67.    According to the brochure for the 2017 Acura MDX, "The Acura logo was designed to depict an engineering caliper and since its inception has served as a symbol and a constant reminder of our unwavering commitment to precision and craft. The caliper is our true north and a promise of the painstaking attention to detail that goes into every Acura. The 2017 MDX is the manifestation of that commitment."[8]

68.    Honda also promised that:

People are more important to us than any vehicle or industry accolades, so when it comes to protecting our passengers, we ask ourselves one simple question, "Is it safe enough for our own families to ride in?" It's our greatest goal to one day drive in a zero-collision society, and the 2017 MDX was designed and engineered with that goal in mind. For us, safety is personal.[9]

69.    The brochure for 2019 Acura MDX promised that, "THE MOST IMPORTANT PERSON ON THE ROAD IS EVERY PERSON ON THE

---

[8] https://www.acuracertified.com/-/media/Acura-Certified-Images/Brochures/2017_MDX_Brochure.ashx; *see also* 2018 Acura MDX brochure, available at https://cdn.dealereprocess.org/cdn/brochures/acura/2018-mdx.pdf

[9] *Id.*

ROAD.  AcuraWatch™ forms a network of seamlessly connected sensing technologies within the MDX. These advanced safety and driver-assistance features constantly gather information and offer warnings, and some features can even take action when necessary, all to help prevent, avoid, or minimize threats."[10]

70.    The brochure for the 2019 Acura RDX similarly promised, "Red-light to-green-light go power is perfectly mated to a 10-speed transmission and is instinctively connected to your desires through Sequential SportShift paddle shifters."[11]

71.    There is no mention in any of the advertising for the Class Vehicles that the vehicle can experience hesitation, stalling, being pushed into limp mode, or even shutting down completely when the driver tries to accelerate from a stop or at highway speeds.  There are only promises of superior performance and safety, without revealing the whole truth about the safety of the vehicle.

72.    Despite its knowledge of the Defect in the Class Vehicles, Honda actively concealed the existence and nature of the defect from Plaintiffs and Class Members, while promising advanced performance and safety.

73.    Nor has Honda revised its advertising or informed potential purchasers and lessees that the Defect exists and comes with a corresponding safety risk, especially during highway driving.

74.    Specifically, Honda failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a)    any and all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the

---

[10] Available at https://cdn.dealereprocess.org/cdn/brochures/acura/2019-mdx.pdf (emphasis in original)

[11] Available at https://www.acura.com/-/media/Files/Vehicles/RDX/2019/MY2019-ACURA-RDX-BROCHURE.pdf

1    acceleration;

2    (b)    that the Class Vehicles, including the modules controlling the

3    powertrain components, were unsafe, not in good in working

4    order, were defective, were in need of repair and possibly

5    recalibration or other software mechanisms, and were not fit

6    for their intended or particular purposes; and

7    (c)    that the Class Vehicles were defective, despite the fact that

8    Honda learned of such defects as early as 2014 during pre-

9    production testing, but not later than July 2015 when it issued

10    the first service campaign regarding stalling in Class

11    Vehicles.

12    **CLASS ACTION ALLEGATIONS**

13    75.    Plaintiffs bring this lawsuit as a class action on behalf of himself

14    and all others similarly situated as members of the proposed Class pursuant to

15    Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the

16    numerosity, commonality, typicality, adequacy, predominance, and superiority

17    requirements of those provisions.

18    76.    The Class and Sub-Class are defined as:

19

20    **Class**:    All individuals in the United States who purchased or leased a model year 2016 to 2020 MDX and model year 2019 to 2020 RDX vehicles.

21

22    • **California Sub-Class**:  All members of the Class who reside in or purchased their Class Vehicles in the State of California.

23

24    • **CLRA Sub-Class**:  All members of the Class who are "consumers" within the meaning of California Civil Code § 1761(d).

25

26    • **Implied Warranty Sub-Class**:  All members of the Class who purchased or leased their vehicles in the State of California.

27

28

77.     Excluded from the Class and Sub-Classes are: (1) Defendants, any entity or division in which Defendants has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

78.     Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, upon information and belief, tens of thousands of Class Vehicles have sold in the United States, and thousands within California.  The number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

79.     Typicality: Plaintiff's claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Honda. The representative Plaintiff, like all Class Members, has been damaged by Defendants' misconduct in that they have incurred or will incur the cost of repairing or replacing the defective component systems. Furthermore, the factual bases of Honda's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

80.     Commonality: There are numerous questions of law and fact

CLASS ACTION COMPLAINT

common to Plaintiff and the Class that predominate over any question affecting Class Members individually. These common legal and factual issues include the following:

(a)    Whether Class Vehicles suffer from the Defect;

(b)    Whether the defects relating to the acceleration constitute an unreasonable safety risk;

(c)    Whether Defendants have knowledge of the Defect and, if so, how long Defendants has known of the defect;

(d)    Whether the Defect constitutes a material fact;

(e)    Whether Defendants have a duty to disclose the Defect to Plaintiff and Class Members;

(f)    Whether Plaintiff and the other Class Members are entitled to equitable relief, including a preliminary and/or permanent injunction;

(g)    Whether Defendants knew or reasonably should have known of the Defect before they sold and leased Class Vehicles to Class Members;

(h)    Whether Defendants should be declared financially responsible for notifying the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing the Defect;

(i)    Whether Defendants are obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose or repair the Defect;

(j)    Whether Defendants breached the implied warranty of merchantability pursuant to the Magnuson-Moss Warranty Act;

CLASS ACTION COMPLAINT

(k)  Whether Defendants breached the implied warranty of merchantability pursuant to the Song-Beverly Act;

(l)  Whether Defendants breached their express warranties under UCC section 2301;

(m)  Whether Defendants breached written warranties pursuant to the Magnuson-Moss Warranty Act;

(n)  Whether Defendants breached the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.;

(o)  Whether Defendants breached the Unfair Competition Law, Cal. Bus.  Prof. Code § 17200, *et seq*.;

(p)  Whether Defendants breached the New York General Business Law § 349, *et seq*.;

(q)  Whether Defendants were unjustly enriched by their actions; and

(r)  Whether damages, restitution, equitable, injunctive, compulsory or other relief are warranted.

81.  Adequate Representation: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and they intend to prosecute this action vigorously.

82.  Predominance and Superiority: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that

only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

## FRAUD

## (on behalf of the Class or, alternatively, on behalf of the California Sub-Classes against all Defendants)

83.    Plaintiff incorporate by reference the allegations contained in paragraphs 1 through 82, *supra*.

84.    Plaintiff brings this cause of action on behalf of himself and the Class, or, alternatively, Plaintiff brings this cause of action of behalf of himself and the California Sub-Class.

85.    Defendants intentionally and knowingly misrepresented material facts and concealed, suppressed, and/or omitted material facts including the existence of the Defect and the standard, quality or grade of the Class Vehicles and the fact that the Class Vehicles contain a Defect and corresponding safety risk, with the intent that Plaintiff and members of the Class rely on Defendants' misstatements and omissions.  As a direct result of the Defendants' fraudulent conduct, Plaintiff and members of the Class have suffered actual damages.

86.    Defendants knew at the time of sale or lease and thereafter that the Class Vehicles contained the Defect, misrepresented the safety, reliability and ability to accelerate safely of Class Vehicles, and concealed the Defect and never intended to repair the Defect during the warranty periods.  To date, Defendants

have not provided Plaintiff and members of the Class with a repair or remedy for the Defect.

87. Defendants owed a duty to disclose the Defect and its corresponding safety risk to Plaintiff and the members of the Class because Defendants possessed superior and exclusive knowledge regarding the Defect. Further, Defendants had a duty to disclose any information relating to the safety, quality, functionality and reliability of Class Vehicles because they consistently marketed the Class Vehicles safe, reliable transportation.

88. Once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud. Rather than disclose the Defect, or that the effect of the Defect was that Class Vehicles may not be able to accelerate without suffering a shutdown, being thrown into limp mode, or stalling, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

89. The Defect is material to Plaintiff and the members of the Class because Plaintiff and the members of the Class had a reasonable expectation that the Class Vehicles would not contain a defect that prevents them from accelerating safely and that exposes them and others to a safety risk. No reasonable consumer expects a vehicle to contain a concealed defect in design, manufacture, materials or workmanship, such as the Defect as well as its associated safety risk.

90.    Plaintiff and members of the Class would not have purchased or leased the Class Vehicles but for Defendants' misrepresentations, omissions, and concealment of material facts regarding the nature and quality of the Class Vehicles and the existence of the Defect and corresponding safety risk, or would have paid less for the Class Vehicles.

91.    Defendants knew their misstatements about the Class Vehicles' safety and reliability, and superior driving experience, as well as their concealment and suppression of the existence of the Defect was false and misleading and knew the effect of concealing those material facts.  Defendants knew their misstatements, concealment, and suppression of the Defect would sell more Class Vehicles and would discourage Plaintiff and the members of the Class from seeking replacement or repair of the Defect during the applicable warranty periods.  Further, Defendants intended to induce Plaintiff and the members of the Class into purchasing or leasing the Class Vehicles and to discourage them from seeking replacement or repair of the Defect in order to decrease costs and increase profits.

92.    Defendants acted with malice, oppression and fraud.

93.    Plaintiff and the members of the Class reasonably relied upon Defendants' knowing misrepresentations, concealment and omissions.  As a direct and proximate result of Defendants' misrepresentations, omissions and active concealment of material facts regarding the Defect and the associated safety risk, Plaintiff and the members of the Class have suffered actual damages in an amount to be determined at trial.

# SECOND CAUSE OF ACTION

## VIOLATION OF CALIFORNIA'S CONSUMERS

## LEGAL REMEDIES ACT,

## CALIFORNIA CIVIL CODE § 1750, *ET SEQ.*

**(On behalf of Plaintiff and the CLRA Sub-Class against All Defendants)**

94.  Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 82, *supra*.

95.  Plaintiff brings this cause of action on behalf of himself and the Class, or, alternatively, the CLRA Sub-Class.

96.  Defendants are "persons" as defined by California Civil Code § 1761(c).

97.  Plaintiff and CLRA Sub-class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

98.  By failing to disclose and concealing the defective nature of the Class Vehicles from Plaintiff and prospective Class Members, Honda violated California Civil Code § 1770(a), as it represented that the Class Vehicles had characteristics and benefits that they do not have and represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

99.  Honda's unfair and deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

100.  Honda knew that the Class Vehicles suffered from an inherent defect, were defectively designed, and/or were not suitable for their intended use.

101.  Because of their reliance on Honda's misstatements about the safety and omissions regarding the existence of the Defect, owners and/or lessees of the

Class Vehicles, including Plaintiff, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles are substantially certain to require repair and/or replacement.

102.   Honda was under a duty to Plaintiff and Class Members to disclose the defective nature of Class Vehicles and/or the associated safety risk because:

      (a)    Honda was in a superior position to know the true state of facts about the Defect in Class Vehicles;

      (b)    Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had a uniform, dangerous safety defect until it manifested; and

      (c)    Honda knew that Plaintiff and Class Members could not reasonably have been expected to learn of or discover the Defect.

103.   In advertising and continuing to advertise that the Class Vehicles are safe and reliable, Honda knowingly and intentionally misrepresented the true nature of the Class Vehicles.

104.   In failing to disclose the defective nature of the Class Vehicles, Honda knowingly and intentionally concealed material facts and breached its duty not to do so.

105.   The facts Honda misstated to, concealed from, or failed to disclose to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or whether to pay less for the Class Vehicles.  Had Plaintiff and Class Members known that the Class Vehicles' were defective, they would not have purchased or leased the Class Vehicles or would have paid less for

1  them.

2      106.  Plaintiff and Class Members are reasonable consumers who do not

3  expect their vehicles to exhibit problems such as the Defect which impacts their

4  ability to accelerate safely, at any speed and especially at highway speeds. This

5  is the reasonable and objective consumer expectation relating to a vehicle's

6  ability to be driven on a highway or freeway.

7      107.  Because of Honda's conduct, Plaintiff and CLRA Class Members

8  were harmed and suffered actual damages in that, on information and belief, the

9  Class Vehicles experienced and will continue to experience problems such as the

10  Defect.

11      108.  As a direct and proximate result of Defendants' unfair or deceptive

12  acts or practices, Plaintiff and CLRA Class Members suffered and will continue

13  to suffer actual damages.

14      109.  Plaintiff and the CLRA Class are entitled to equitable relief.

15      110.  Plaintiff has sent notice to Honda of its violations of the CLRA

16  pursuant to California Civil Code § 1782(a). If, within 30 days of notice, Honda

17  does not provide appropriate relief for its violations of the CLRA, Plaintiff will

18  seek monetary, compensatory, and punitive damages, in addition to the equitable

19  relief he seeks now.

**THIRD CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS**

**CODE § 17200, *ET SEQ.***

**(On behalf of Plaintiff and the California Sub-Class**

**against All Defendants)**

25      111.  Plaintiff incorporate by reference the allegations contained in

26  paragraphs 1 through 82, *supra*.

27      112.  Plaintiff brings this cause of action on behalf of himself and the

28

Class, or, alternatively, on behalf of the California Sub-Class.

113.   Because of their reliance on Honda's misstatements and omissions, owners and/or lessees of the Class Vehicles, including Plaintiff, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the Defect, Plaintiff and California Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' are substantially certain to require repair or replacement well before the end of the design life of the components.

114.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

115.   Plaintiff and California Sub-Class Members are reasonable consumers who do not expect their vehicles to exhibit the symptoms of the Defect.

116.   Honda knew the Class Vehicles were defective in design, materials, manufacture, and/or workmanship, would fail prematurely, and were not suitable for their intended use.

117.   In failing to disclose the Defect, Honda has knowingly and intentionally concealed material facts and breached its duty not to do so.

118.   Honda was under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles because:

>          (a)   Honda was in a superior position to know the true state of facts about the defect in the Class Vehicles;
>
>          (b)   The Defect poses a safety risk to Plaintiff and the California Sub-Class; and
>
>          (c)   Honda actively concealed the defective nature of the Class Vehicles from Plaintiff and the California Sub-Class.

119.   The facts Honda misstated, concealed from, or failed to disclose to Plaintiff and California Sub-Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles. Had they known of the Defect, Plaintiff and the other California Sub-Class Members would have paid less for the Class Vehicles or would not have purchased or leased them at all.

120.   Honda continued to deny and conceal the defective nature of the Class Vehicles even after Class Members began to report problems.  Honda also continues to represent that the Class Vehicles are safe and reliable to drive, even on highways and freeways.

121.   Honda's conduct was and is likely to deceive consumers.

122.   Honda's acts, conduct, and practices were unlawful, in that they constituted:

(a)   Violations of California's Consumers Legal Remedies Act;

(b)   Violations of the Song-Beverly Consumer Warranty Act;

(c)   Violations of the Magnuson-Moss Warranty Act; and

(d)   Breach of Express Warranty under California Commercial Code section 2313.

123.   By its conduct, Honda has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

124.   Honda's unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

125.   As a direct and proximate result of Honda's unfair and deceptive practices, Plaintiff and California Sub-Class Members have suffered and will continue to suffer actual damages.

126.   Honda has been unjustly enriched and should be required to make

restitution to Plaintiff and the California Sub-Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

**FOURTH CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTIES**

**PURSUANT TO SONG-BEVERLY CONSUMER WARRANTY ACT,**

**CALIFORNIA CIVIL CODE §§ 1792 AND 1791.1,** *ET SEQ.*

**(On behalf of Plaintiff and the Implied Warranty Sub-Class**

**against All Defendants)**

127. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 82, *supra*.

128. Plaintiff brings this cause of action against all Defendants on behalf of himself and the Implied Warranty Sub-Class.

129. Honda was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased because the Class Vehicles are hybrid vehicles.

130. Honda provided Plaintiff and Implied Warranty Sub-Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable, pass without objection in the trade, are fit for the ordinary purposes for which they were sold, are adequately labeled, and conform to the promises and affirmations on the label.  However, the Class Vehicles are not merchantable because they are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.  The Class Vehicles would not pass without objection in the trade because they are subject to the effect of the Defect, namely hesitation, stalls, being thrown into

neutral, or shutting down completely when the driver tries to accelerate, especially at highway speeds.

131.   Honda impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles, which were manufactured, supplied, distributed, and/or sold by Honda, would provide safe and reliable transportation; (ii) a warranty that the Class Vehicles would be fit for their intended use; (iii) that the Class Vehicles would pass without objection in the trade; (iv) that Class Vehicles are adequately labeled; and (v) that Class Vehicles would conform the promises and affirmations on their labels.

132.   Contrary to the applicable implied warranties, the Class Vehicles and their powertrain systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation, would not pass without objection in the trade, were not adequately labeled, and did not conform to the promises and affirmation on their labels.  Instead, the Class Vehicles are defective.

133.   The alleged Defect is inherent and was present in each Class Vehicle at the time of sale.

134.   Because of Honda's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

135.   Honda's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**FIFTH CAUSE OF ACTION**

**BREACH OF EXPRESS WARRANTY**

**(By Plaintiff on behalf of the Class, or alternatively, the California Sub-Class against Defendant Honda USA)**

136.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 73, *supra*.

137.   Plaintiff brings this cause of action on behalf of himself and on behalf of the Class, or, alternatively the California Sub-class, against Honda USA.

138.   Honda USA provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain. Accordingly, Honda USA's express warranty is an express warranty under California law.

139.   The powertrain components were manufactured and/or installed in the Class Vehicles by Honda Japan and are covered by the express warranty provided by the Acura Automobile Division, a division of Honda USA, on behalf of Honda USA.

140.   In a section entitled "Warranty Coverage," Honda USA's express warranty provides in relevant part that "Acura will repair or replace any part that is defective in material or workmanship under normal use."

141.   According to Honda USA, the New Vehicle Limited Warranty coverage for Acura models is for 4 years or 50,000 miles, whichever occurs first. The Powertrain Limited Warranty coverage is for 6 years or 70,000 miles, whichever occurs first.

142.   Honda USA breached the express warranties by selling and leasing Class Vehicles, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge,

the defective components which cause the Defect. In addition, when Honda USA did perform repairs, via software updates, nevertheless breached the express warranty by failing to completely repair the Defect, such that these Class Vehicles are still subject to hesitation, stalls, sudden, rapid deceleration, shifting into neutral, and shutdowns while being driven.

143.   Plaintiff and members of the Class have had sufficient direct dealings with either Honda USA or its agents (dealerships and technical support) to established privity of contract between Honda USA, on one hand, and Plaintiff and each of the other Class Members on the other hand.  Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Honda USA and its distributors and dealers, and specifically, of Honda USA's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

144.   Plaintiff was not required to notify Honda USA of the breach or was not required to do so because affording Honda USA a reasonable opportunity to cure its breach of written warranty would have been futile. Honda USA was also on notice of the Defect from its own pre-production testing, from the early complaints and service requests it received from Class Members, its own testing and analysis which lead to the issuance of service bulletins and recalls, from repairs and/or replacements of powertrain components, and from other internal sources.

145.   Honda USA was further provided notice of its breach of express warranties by Plaintiff by letter dated April 7, 2020.

146.   Plaintiff also provided notice of express warranties when he took his

1    Class Vehicle to Hoehn Acura, a Honda-authorized provided of warranty repairs.

2    Despite these notices, Honda USA failed to cure the breach of express warranties

3    within an adequate time.

4    147.   As a direct and proximate cause of Honda USA's breach of express

5    warranties, Plaintiff and the other Class Members have suffered, and continue to

6    suffer, damages, including economic damages at the point of sale or lease.

7    Additionally, Plaintiff and the other Class Members have incurred or will incur

8    economic damages at the point of repair in the form of the cost of repair.

9    148.   Plaintiff and the other Class Members are entitled to legal and

10   equitable relief against Honda USA, including actual damages, consequential

11   damages, specific performance, attorneys' fees, costs of suit, and other relief as

12   appropriate.

13                          **SIXTH CAUSE OF ACTION**

14   **VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT FOR**

15                **BREACH OF EXPRESS WARRANTIES,**

16                   **15 U.S.C. § 2303 *ET SEQ.***

17     **(By Plaintiff on behalf of the Class against All Defendants)**

18   149.   Plaintiff incorporates by reference the allegations contained in

19   paragraphs 1 through 82, *supra*.

20   150.   Plaintiff brings this cause of action on behalf of himself and the

21   Class against Honda USA.

22   151.   The Class Vehicles are a "consumer product" within the meaning of

23   the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

24   152.   Plaintiff and Class Members are "consumers" within the meaning of

25   the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

26   153.   Honda USA is a "supplier" and "warrantor" within the meaning of

27   the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

28

154.   Honda USA's express warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

155.   As set forth *supra* and incorporated by reference, Honda USA provided a 4 year, 50,000-mile New Vehicle Limited Warranty, and a 6 year, 70,000 mile Powertrain Warranty. Honda USA breached the express warranties by selling and leasing Class Vehicles with the Defect, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, powertrain components that contribute to the Defect. In addition, when Honda-authorized dealers did attempt repairs, Honda nevertheless breached the express warranty by failing to permanently repair the Defect in Plaintiff's and Class Members', thus failing to "repair" the defect.

156.   Honda USA's breach of the express warranties has deprived the Plaintiff and Class members of the benefit of their bargain by failing to provide Class Vehicles capable of accelerating, especially at highways, without stalling, suddenly decelerating, shutting down, shifting to neutral, or falling into limp mode.

157.   Plaintiff and members of the Class have had sufficient direct dealings with either Honda USA or its agents (dealerships and technical support) to established privity of contract between Honda USA, on one hand, and Plaintiff and each of the other Class Members on the other hand.  Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Honda USA and its distributors and dealers, and specifically, of Honda USA's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the

CLASS ACTION COMPLAINT

1    consumer only.

2    158.   Affording Honda USA a reasonable opportunity to cure its breach of

3    written warranties would be unnecessary and futile. At the time of sale or lease

4    of each Class Vehicle and all relevant times thereafter, Honda USA knew or was

5    reckless in not knowing, of the lack of truth in their statements about the safety

6    and reliability of the Class Vehicles, of the material omissions concerning the

7    standard, quality or grade of the Class Vehicles and the presence of the Defect

8    and associated safety risk, but failed to repair or replace the powertrain

9    components and/or disclose the Defect. Under the circumstances, the remedies

10   available under any informal settlement procedure would be inadequate and any

11   requirement that Plaintiffs resort to an informal dispute resolution procedure

12   and/or afford Honda USA additional reasonable opportunities to cure its breach

13   of warranties is excused and thereby is deemed satisfied.

14   159.   Plaintiff and members of the Class would suffer economic hardship

15   if they returned their Class Vehicles, but did not receive the return of all

16   payments made by them to Honda USA and/or their agents.  Thus, Plaintiff and

17   members of the Class have not re-accepted their Class Vehicles by retaining

18   them.

19   160.   Defendants was provided notice by letter dated April 7, 2020, that

20   Plaintiffs would pursue a claim under the MMWA on behalf of a class.

21   161.   The amount in controversy of Plaintiffs' individual claims meets or

22   exceeds the sum or value of $25,000.  In addition, the amount in controversy

23   meets or exceeds the sum or value of $50,000 (exclusive of interests and costs)

24   computed on the basis of all claims to be determined in this suit.

25   162.   Honda USA has been afforded a reasonable opportunity to cure its

26   breach, including when Plaintiffs and Class Members brought their vehicles in

27   for diagnoses and repair of the Defect.

28

CLASS ACTION COMPLAINT

163.    As a direct and proximate cause of Honda USA's breach of written warranties, Plaintiff and Class Members sustained and incurred damages and other losses in an amount to be determined at trial. Honda USA's conduct damaged Plaintiff and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

**FOR BREACH OF IMPLIED WARRANTIES,**

**15 U.S.C. § 2303 *et seq*.**

**(By Plaintiff on behalf of the Class against All Defendants)**

164.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 82, *supra*.

165.    Plaintiff bring this cause of action on behalf of himself and the Class against all Defendants.

166.    The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

167.    Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

168.    Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

169.    Honda provided Plaintiff and the Class with an implied warranty that the Class Vehicles and their components and parts are merchantable, pass without objection in the trade, are fit for the ordinary purposes for which they were sold, are adequately labeled, and conform to the promises and affirmations on the label.  However, the Class Vehicles are not merchantable because they are not fit for their ordinary purpose of providing reasonably reliable and safe

transportation because, *inter alia*, the Class Vehicles suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.  The Class Vehicles would not pass without objection in the trade, are not adequately labeled and do not comfort the promises and affirmations on the label because the Class Vehicles are prone to decelerate suddenly, stall, shutdown, go into limp mode, or shift into neutral when the driver tries to accelerate, especially at highway speeds.

170.   Honda impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their powertrain systems, which were manufactured, supplied, distributed, and/or sold by Honda, would provide safe and reliable transportation; (ii) a warranty that the Class Vehicles would be fit for their intended use; (iii) that the Class Vehicles would pass without objection in the trade; (iv) that Class Vehicles are adequately labeled; and (v) that Class Vehicles would conform the promises and affirmations on their labels.

171.   Contrary to the applicable implied warranties, the Class Vehicles and their powertrain systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation, would not pass without objection in the trade, were not adequately labeled, and did not conform to the promises and affirmation on their labels.  Instead, the Class Vehicles are defective, including the defective powertrain systems.

172.   Defendants' breach of implied warranties has deprived Plaintiff and Class Members of the benefit of their bargain by failing to provide Class Vehicles with a car that reliably and safely accelerates when the gas pedal is depressed.

CLASS ACTION COMPLAINT

173.   Plaintiff and members of the Class have had sufficient direct dealings with either Honda or its agents (dealerships and technical support) to established privity of contract between Honda, on one hand, and Plaintiff and each of the other Class Members on the other hand.  Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Honda and its distributors and dealers, and specifically, of Honda's implied warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

174.   Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew or were reckless in not knowing, of the lack of truth in their statements about the safety and reliability of the Class Vehicles, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the Defect and associated safety risk, but failed to repair or replace the defective powertrain system components and/or disclose the Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants additional reasonable opportunities to cure its breach of warranties is excused and thereby is deemed satisfied.

175.   Plaintiff and members of the Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants and/or their agents.  Thus, Plaintiff and members of the Class have not re-accepted their Class Vehicles by retaining

1  them.

2      176.   Defendants were provided notice by letters sent to Honda dated

3  April 7, 2020 that Plaintiff would pursue a claim under the MMWA on behalf of

4  a class.

5      177.   The amount in controversy of Plaintiff's individual claims meets or

6  exceeds the sum or value of $25,000. In addition, the amount in controversy

7  meets or exceeds the sum or value of $50,000 (exclusive of interests and costs)

8  computed on the basis of all claims to be determined in this suit.

9      178.   Defendants have been afforded a reasonable opportunity to cure its

10  breach, including when Plaintiff and Class Members brought their vehicles in for

11  diagnoses and repair of the Defect.

12      179.   As a direct and proximate cause of Defendants' breach of implied

13  warranties, Plaintiff and Class Members sustained and incurred damages and

14  other losses in an amount to be determined at trial. Defendants' conduct

15  damaged Plaintiff and Class Members, who are entitled to recover actual

16  damages, consequential damages, specific performance, diminution in value,

17  costs, attorneys' fees, and/or other relief as appropriate.

18      180.   Because of Defendants' violations of the Magnuson-Moss Warranty

19  Act as alleged herein, Plaintiff and Class Members have incurred damages.

20              **EIGHTH CAUSE OF ACTION**

21              **UNJUST ENRICHMENT**

22  **(By Plaintiff on Behalf of the Class, or Alternatively on behalf of the**

23          **California Sub-Class against All Defendants)**

24      181.   Plaintiff incorporates by reference the allegations contained in

25  paragraphs 1 through 82, *supra*.

26      182.   Plaintiff bring this cause of action on behalf of himself and the

27  Class, or alternatively, Plaintiff brings this cause of action on behalf of himself

28

1    and the California Sub-Class.

2        183.   As a direct and proximate result of Honda's misrepresentations

3    about the reliability and safety of the Class Vehicles and failure to disclose

4    known defects, Honda has profited through the sale and lease of the Class

5    Vehicles.  Although these vehicles are purchased through Honda's agents, the

6    money from the vehicle sales flows directly back to Honda.

7        184.   As a result of its wrongful acts, concealments, and omissions of the

8    defect in its Class Vehicles, as set forth above, Honda charged higher price for

9    their vehicles than the vehicles' true value.  Plaintiff and members of the Class

10   paid that higher price for their vehicles to Honda's authorized distributors and

11   dealers, which are in Honda's control.  Honda also reaps huge profits from the

12   sale of its vehicles through its authorized distributors and dealers, netting $143.1

13   billion in revenue for the fiscal year ended March 31, 2019 alone.

14       185.   Additionally, as a direct and proximate result of Honda's failure to

15   disclose known defects in the Class Vehicles, Plaintiff and Class Members have

16   vehicles that will require high-cost repairs that can and therefore have conferred

17   an unjust substantial benefit upon Honda.

18       186.   Honda has been unjustly enriched due to the known defects in the

19   Class Vehicles through the use money paid that earned interest or otherwise

20   added to Honda's profits when said money should have remained with Plaintiff

21   and Class Members.

22       187.   As a result of the Honda's unjust enrichment, Plaintiff and Class

23   Members have suffered damages.

24                              **RELIEF REQUESTED**

25       188.   Plaintiff, on behalf of himself and all others similarly situated,

26   request the Court to enter judgment against Defendants, as follows:

27            (a)    An order certifying the proposed Class and Sub-Classes,

28

1    designating Plaintiff as representative of the Class, and

2    designating the undersigned as Class Counsel;

3    (a)    A declaration that Defendants are financially responsible for

4    notifying all Class Members about the defective nature of the

5    of the powertrain system, including the need for repairs;

6    (b)    An order enjoining Defendants from further deceptive

7    distribution, sales, and lease practices with respect to Class

8    Vehicles; compelling Defendants to issue a voluntary recall

9    for the Class Vehicles pursuant to 49 U.S.C. § 30118(a);

10   compelling Defendants to remove, repair, and/or replace the

11   Class Vehicles' with suitable alternative product(s) that do not

12   contain the defects alleged herein; enjoining Defendants from

13   selling the Class Vehicles with the misleading information;

14   and/or compelling Honda USA to reform its warranty, in a

15   manner deemed to be appropriate by the Court, to cover the

16   injury alleged and to notify all Class Members that such

17   warranty has been reformed;

18   (c)    A declaration requiring Defendants to comply with the

19   various provisions of the Song-Beverly Act alleged herein and

20   to make all the required disclosures;

21   (d)    An award to Plaintiff and the Class for compensatory,

22   exemplary, and statutory damages, including interest, in an

23   amount to be proven at trial, except that Plaintiff presently

24   does not seek damages under his Consumers Legal Remedies

25   Act claim.

26   (e)    Any and all remedies provided pursuant to the Song-Beverly

27   Act, including California Civil Code section 1794;

28

CLASS ACTION COMPLAINT

1       (f)    Any and all remedies provided pursuant to the Magnuson-

2              Moss Warranty Act;

3       (g)    A declaration that Defendants must disgorge, for the benefit

4              of the Class, all or part of the ill-gotten profits it received

5              from the sale or lease of its Class Vehicles or make full

6              restitution to Plaintiff and Class Members;

7       (h)    An award of attorneys' fees and costs, as allowed by law;

8       (i)    An award of attorneys' fees and costs pursuant to California

9              Code of Civil Procedure § 1021.5;

10      (j)    An award of pre-judgment and post-judgment interest, as

11             provided by law;

12      (k)    Leave to amend the Complaint to conform to the evidence

13             produced at trial; and

14      (l)    Such other relief as may be appropriate under the

15             circumstances.

16           **DEMAND FOR JURY TRIAL**

17      189.   Pursuant to Federal Rule of Civil Procedure 38(b) and Southern

18  District of California Local Rule 38.1, Plaintiff demands a trial by jury of all

19  issues in this action so triable.

20

21  Dated:  April 7, 2020           Respectfully submitted,

22                    Capstone Law APC

23

24                By: /s/ Cody R. Padgett

                  Steven Weinmann

25                    Tarek H. Zohdy

                  Cody R. Padgett

26                    Trisha K. Monesi

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BERGER MONTAGUE PC
Russell D. Paul (*Pro Hac Vice* to be filed*)*
Amey J. Park (*Pro Hac Vice* to be filed*)*
Abigail J. Gertner (*Pro Hac Vice* to be filed)
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Tel:  (215) 875-3000
Fax:  (215) 875-4604
rpaul@bm.net

Attorneys for Plaintiffs

CLASS ACTION COMPLAINT